Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GANG WEI,<br><br>    Plaintiff,<br><br>  vs.<br><br>ALEXION PHARMACEUTICALS, INC., DAVID R. BRENNAN, LUDWIG HANTSON, FELIX J. BAKER, JOHN T. MOLLEN, CHRISTOPHER J. COUGHLIN, FRANCOIS NADER, DEBORAH DUNSIRE, JUDITH A. REINSDORF, PAUL A. FRIEDMAN, ANDREAS RUMMELT, DELTA OMEGA SUB HOLDINGS INC., DELTA OMEGA SUB HOLDINGS INC. 1, DELTA OMEGA SUB HOLDINGS LLC 2, and ASTRAZENECA PLC.<br><br>    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3) Breach of Fiduciary Duties<br>(4) Aiding and Abetting Breach of Fiduciary Duties<br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Gang Wei ("Plaintiff"), by his attorneys, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.  Plaintiff brings this stockholder action against Alexion Pharmaceuticals, Inc. ("Alexion" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual

Defendants,"), Delta Omega Sub Holdings Inc., Delta Omega Sub Holdings Inc. 1, Delta Omega Sub Holdings LLC 2 (collectively "Merger Vehicles"), and AstraZeneca PLC ("AstraZeneca," and collectively with Alexion, Merger Sub, and Individual Defendants, the "Defendants"), for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to AstraZeneca as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on an proposed transaction valued at approximately $39 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 10, 2020, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Alexion will become an indirect wholly-owned subsidiary of Parent, a subsidiary of the AstraZeneca. Alexion shareholders will receive $60 in cash and 2.1243 AstraZeneca American Depositary Shares (ADSs) (each ADS representing one-half of one (1/2) ordinary share of AstraZeneca, as evidenced by American Depositary Receipts (ADRs)) for each Alexion share. Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39 billion or $175 per share.

3.      Thereafter, on February 19, 2020, AstraZeneca filed a Registration Statement on Form F-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The dubious nature of the Proposed Transaction is laid bare considering that the merger consideration is comprised partly of AstraZeneca ADSs exchanged at a *fixed* exchange ratio of 2.1243 which means that Plaintiff will receive 2.1243 shares of AstraZeneca ADSs as a portion of their Merger Consideration in exchange for each of their Alexion shares, regardless of the price of these AstraZeneca ADSs at the close of the transaction.  Thus, the consideration payable to Plaintiff is not insulated from fluctuations in AstraZeneca's value, and Plaintiff is left in the precarious position of not knowing whether the consideration payable to them will decline.

5.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Registration Statement describes an insufficient process in which the Board

acquiesced to Elliot Advisors (UK) Limited ("Elliot") an activist stockholder that had publicly demanded a sale of the Company for nearly a year from mid-2019 to mid-2020.

6.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Alexion without first taking steps to ensure that Plaintiff as a public stockholder of Alexion would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or the AstraZeneca without regard for Alexion's public stockholders, including Plaintiff.  Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Alexion stockholders.

7.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders such as Plaintiff.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.      In violation of the Exchange Act and in further violation of their fiduciary duties, on February 19, 2021, Defendants caused to be filed the materially deficient Registration Statement with the SEC in an effort to solicit Plaintiff and other Alexion stockholders to vote their Alexion shares in favor of the Proposed Transaction.  The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of the Defendants fiduciary duties.  As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Alexion and AstraZeneca, provided by Alexion and AstraZeneca to the Company's financial advisor BofA Securities, Inc. ("BofA"); and (c) the data and inputs underlying

the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA and provides to the Company and the Board.

9.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

**PARTIES**

10.     Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been an Alexion stockholder.

11.     Defendant Alexion develops and commercializes various therapeutic products.  Alexion is organized under the laws of Delaware and has its principal place of business at 121 Seaport Boulevard, Boston Massachusetts 02210.  Shares of Alexion common stock are traded on the New York Stock Exchange under the symbol "ALXN."

12.     Defendant David R. Brennan ("Brennan") has been a Director of the Company at all relevant times.  In addition, Brennan serves as the Chairman of the Company Board.

13.     Defendant Ludwig Hantson ("Hantson ") has been a director of the Company at all relevant times.  In addition, Hantson serves as the Company's Chief Executive Officer ("CEO").

14.     Defendant Felix J. Baker ("Baker") has been a director of the Company at all relevant times.

15.     Defendant John T. Mollen ("Mollen") has been a director of the Company at all relevant times.

16.     Defendant Christopher J. Coughlin ("Coughlin") has been a director of the Company at all relevant times.

17.     Defendant Francois Nader ("Nader") has been a director of the Company at all relevant times.

18.     Defendant Deborah Dunsire ("Dunsire") has been a director of the Company at all relevant times.

19.     Defendant Judith A. Reinsdorf ("Reinsdorf") has been a director of the Company at all relevant times.

20.     Defendant Paul A. Friedman ("Friedman") has been a director of the Company at all relevant times.

21.     Defendant Andreas Rummelt ("Rummelt") has been a director of the Company at all relevant times.

22.     The defendants identified in paragraphs 12 through 21 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

23.     Defendant AstraZeneca discovers, develops, and commercializes prescription medicines in the areas of oncology, cardiovascular, renal and metabolism, respiratory, autoimmunity, infection, neuroscience, and gastroenterology worldwide. Shares of AstraZeneca common stock are traded on the Nasdaq under the symbol "AZN."

24.     Defendant Merger Vehicles are each Delaware corporations and wholly owned subsidiary of AstraZeneca created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render

the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District. In fact, Alexion's common stock trades on the NYSE, which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

28.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Alexion and Plaintiff as an Alexion stockholder and owe the Company and Plaintiff the duties of due care, loyalty, and good faith.

29.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Alexion and owe the Company and Plaintiff in his capacity as a Company stockholder the duties of due care, loyalty, and good faith.

30.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company and public stockholders of the Company such as Plaintiff.  To diligently comply with these duties, directors of a corporation must:

a.     act with the requisite diligence and due care that is reasonable under the circumstances;

b.     act in the best interest of the company and its stockholders such as Plaintiff;

c.     use reasonable means to obtain material information relating to a given action or decision;

d.     refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

> e.      avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and
>
> disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

31.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Alexion, are obligated to refrain from:

> a.      participating in any transaction where the directors' or officers' loyalties are divided;
>
> b.      participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or;
>
> c.      unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders, including Plaintiff.

32.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Alexion and Plaintiff in his capacity as a public stockholder of Alexion, including their duties of loyalty, good faith, and due care.

33.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for their Alexion common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

34.     Alexion is a global biopharmaceutical company focused on serving patients and families affected by rare diseases and devastating conditions through the discovery, development and commercialization of life-changing medicines. Headquartered in Boston, Massachusetts, Alexion has offices around the globe and serves patients in more than 50 countries.

35.     Alexion focuses its research efforts on novel molecules and targets in the complement cascade and its development efforts on haematology, nephrology, neurology, metabolic disorders, cardiology, ophthalmology and acute care.

36.     As a leader in rare diseases for more than 25 years, Alexion has developed and commercializes two approved complement inhibitors to treat patients with PNH and atypical haemolytic uremic syndrome, as well as the first and only approved complement inhibitor to treat anti-acetylcholine receptor antibody-positive generalized myasthenia gravis and neuromyelitis optica spectrum disorder. Alexion also has two highly innovative enzyme replacement therapies for patients with life-threatening and ultra-rare metabolic disorders, hypophosphatasia and lysosomal acid lipase deficiency as well as the first and only approved Factor Xa inhibitor reversal agent. In addition, Alexion is developing several mid-to-late-stage therapies, including a copper-binding agent for Wilson disease, FcRn antibody for rare IgG-mediated diseases and an oral Factor D inhibitor as well as several early-stage therapies, including one for light chain amyloidosis, a second oral Factor D inhibitor and a third complement inhibitor.

37.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated impressive financial results.  For example, in an October 29, 2020 press release announcing its 2020 Q3 operational and financial results, the Company highlighted $1.59 billion in revenues a 26% increase year over year, earnings per share of $2.62, $2.3 billion in cash and marketable securities, and the Company's revenue guidance for the year was raised by $250 million since its last evaluation after Q2.

38.     Specifically, in the Investors Conference Call for the Q3 Financial Results, CEO Defendant Hantson commented on Alexion's growth into the company it is today, "Over the last three years, we have transformed this company, establishing a strong foundation for sustainable long-term growth and delivering significant value for patients and shareholders. Driven by our long-term value-creation strategy, we see sustainable growth ahead and a clear path to revenues of $9 billion to $10 billion by 2025 and continuous best-in-class operating margins. Beyond this, we see even greater value

within our current pipeline of more than $10 billion in peak sales potential. As a biotech company, Alexion is uniquely positioned within the industry with a unique set of rare disease tailored capabilities."

39.    Chief Financial Officer Aradhana Sarin covered the financial results in the Investors Conference Call, saying, "As we shared at our Investor Day earlier this month, we are increasing our guidance. And this update reflects revenues between $5.9 billion to $5.95 billion for the full year, which is $350 million above our prior guidance and reflects 19% growth year over year at the midpoint. In terms of product revenue, updated guidance for SOLIRIS and ULTOMIRIS is $5 billion to $5.035 billion. Guidance for our metabolic business is now $835 million to $845 million, and we expect ANDEXXA revenues to be $65 million to $70 million in the second half of 2020. This revised guidance reflects the continued strength we have seen in the business and our fourth quarter outlook, including compliance rates continue to be strong across indications and slightly above expectations; continued strong conversion to ULTOMIRIS and the corresponding price headwinds that conversion implies; and increased demand for ANDEXXA."

40.    After the Company released its Q3 results, *The Motley Fool* wrote an article titled, "What's Behind Alexion's Impressive Q3 Results" where it marveled over Alexion's financial success now and for the foreseeable future, "with shares trading at only 10 times expected earnings, Alexion is arguably one of the biggest bargains in all of biotech. Alexion might not be such a bargain for long if continues delivering strong growth. That's exactly what the drugmaker did in the third quarter… As usual, Soliris generated the bulk of Alexion's revenue in the third quarter. Sales for the rare-disease drug rose 5% year over year to $1.04 billion. However, sales for Ultomiris, the heir apparent to Soliris, skyrocketed 222% to $289.3 million… Perhaps the best news for Alexion was that the company is ahead of its goal of establishing Ultomiris as the new standard of care in treating paroxysmal nocturnal hemoglobinuria (PNH), a rare blood disease that causes the destruction of red blood cells. The main potential catalysts for the biotech stock center around securing new indications for existing drugs and advancing new pipeline candidates."

41.     In addition to the Company's positive outlook financially, analysts have had lofty projections for the future of the Company. According to CNN Business, the 17 analysts offering 12-month price forecasts for Alexion have a median target of $175.00, with a high estimate of $200.00. The day before the announcement of the Proposed Transaction, the consideration offered would equal around $175.00 per share, equal to the median estimate for the Company's stock. Ultimately, there is no premium paid for a company that has an industry-wide consensus of inevitable success.

42.     Since the announcement of the Proposed Transaction, AstraZeneca's per share price has fluctuated significantly and has recently traded as low as $50.03 per share, which would translate into a merger consideration of only approximately $161.30 per share. The fact that the Proposed Transaction does not guarantee Alexion's public stockholders protection from such fluctuations in AstraZeneca's per share price seems to be of no concern to the Defendants.

43.     Despite this upward trajectory and financial promise, the Individual Defendants have caused Alexion to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

44.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to AstraZeneca.

45.     First, the Registration Statement indicates a continued effort by activist stockholder Elliot to force the Alexion Board to enter into a strategic alternative to sell the Company.  The Registration Statement indicates that this effort by Elliot was ongoing and originated in September of 2019 and continued until at least May 2020, shortly before the sales process began in earnest.

46.     Despite this suspicious timing, the Registration Statement fails to provide sufficient information regarding Elliot's demand and its relation to the eventual sales process and Proposed Transaction.

47.    Next, the Registration Statement indicates that no independent committee of disinterested directors was created to run the sales process.

48.    Such a lack of an independent committee is notable given that Defendant Brennan, the Chairman of the Alexion Board, and contact person for communications on behalf of the Company during the sales process, was formerly a director and Chief Executive Officer of AstraZeneca.  This calls into question Defendant Brennan's ability to conduct the sales process in an unbiased manner and raises questions as to why nothing was done to remedy such a clear conflict.  Notably the Registration Statement does not disclose sufficient information on what, if anything, was done to address such a potential conflict.

49.    In addition, the Registration Statement is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including AstraZeneca, whether these agreements differ from each other, and if so in what way.

50.    It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

51.    On December 12, 2020, Alexion and AstraZeneca issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **CAMBRIDGE, England & BOSTON--(BUSINESS WIRE)**--Dec. 12, 2020-- AstraZeneca and Alexion Pharmaceuticals, Inc. (Alexion) have entered into a definitive agreement for AstraZeneca to acquire Alexion.
>
> Alexion shareholders will receive $60 in cash and 2.1243 AstraZeneca American Depositary Shares (ADSs) (each ADS representing one-half of one (1/2) ordinary share of AstraZeneca, as evidenced by American Depositary Receipts (ADRs)) for each Alexion share. Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.
>
> The boards of directors of both companies have unanimously approved the acquisition. Subject to receipt of regulatory clearances and approval by shareholders of both companies, the acquisition is expected to close in Q3 2021, and upon completion, Alexion shareholders will own c.15% of the combined company.

Pascal Soriot, Chief Executive Officer, AstraZeneca, said: "Alexion has established itself as a leader in complement biology, bringing life-changing benefits to patients with rare diseases. This acquisition allows us to enhance our presence in immunology. We look forward to welcoming our new colleagues at Alexion so that we can together build on our combined expertise in immunology and precision medicines to drive innovation that delivers life-changing medicines for more patients."

Ludwig Hantson, Ph.D., Chief Executive Officer, Alexion, said: "For nearly 30 years Alexion has worked to develop and deliver transformative medicines to patients around the world with rare and devastating diseases. I am incredibly proud of what our organisation has accomplished and am grateful to our employees for their contributions. This transaction marks the start of an exciting new chapter for Alexion. We bring to AstraZeneca a strong portfolio, innovative rare disease pipeline, a talented global workforce and strong manufacturing capabilities in biologics. We remain committed to continuing to serve the patients who rely on our medicines and firmly believe the combined organisation will be well positioned to accelerate innovation and deliver enhanced value for our shareholders, patients and the rare disease communities."

**Strategic rationale**

Both companies share the same dedication to science and innovation to deliver life-changing medicines. The capabilities of both organisations will create a company with great strengths across a range of technology platforms, with the ability to bring innovative medicines to millions of people worldwide. The combined company will also have an enhanced global footprint and broad coverage across primary, speciality and highly specialised care.

Scientific leadership - accelerated presence in immunology

AstraZeneca has built a growing scientific presence in oncology, and in cardiovascular, renal and metabolism, and respiratory diseases, with a focus on organ protection. AstraZeneca has developed a broad range of technologies, initially focused on small molecules and biologics and with a growing focus in precision medicine, genomics, oligonucleotides and epigenetics. More recently, AstraZeneca has increased its efforts in immunology research and the development of medicines for immune-mediated diseases.

Alexion has pioneered complement inhibition for a broad spectrum of immune-mediated rare diseases caused by uncontrolled activation of the complement system, a vital part of the immune system. Alexion's franchise includes *Soliris* (eculizumab), a first-in-class anti-complement component 5 (C5) monoclonal antibody. The medicine is approved in many countries for the treatment of patients with paroxysmal nocturnal haemoglobinuria (PNH), atypical haemolytic uremic syndrome, generalized myasthenia gravis and neuromyelitis optica spectrum disorder. More recently, Alexion launched *Ultomiris* (ravulizumab), a second-generation C5 monoclonal antibody with a more convenient dosing regimen.

Alexion's immunology expertise extends to other targets in the complement cascade beyond C5 as well as additional modalities, with its deep pipeline including Factor D small-molecule inhibitors of the alternative pathway of the complement system, an antibody blocking neonatal Fc receptor (FcRn)- mediated recycling, and a bi-specific

mini-body targeting C5, among others. The FcRn extends the half-life and hence the availability of pathogenic immunoglobulin G (IgG) antibodies.

AstraZeneca, with Alexion's R&D team, will work to build on Alexion's pipeline of 11 molecules across more than 20 clinical-development programmes across the spectrum of indications, in rare diseases and beyond.

Alexion's leading expertise in complement biology will accelerate AstraZeneca's growing presence in immunology. The acquisition adds a new technology platform to AstraZeneca's science and innovation-driven strategy. The complement cascade is pivotal to the innate immune system. It plays a crucial role in many inflammatory and autoimmune diseases across multiple therapy areas, including haematology, nephrology, neurology, metabolic disorders, cardiology, ophthalmology and acute care. In contrast, AstraZeneca's capabilities in genomics, precision medicine and oligonucleotides can be leveraged to develop medicines targeting less-frequent diseases. Combining AstraZeneca's capabilities in precision medicine and Alexion's expertise in rare-disease development and commercialisation will enable the new company to develop a portfolio of medicines addressing the large unmet needs of patients suffering from rare diseases.

The combined companies will bring together two rapidly converging, patient-centric models of care delivery with combined strengths in immunology, biologics, genomics and oligonucleotides to drive future medicine innovation. AstraZeneca intends to establish Boston, Massachusetts, US as its headquarters for rare diseases, capitalising on talent in the greater Boston area.

Industry-leading revenue growth; enhanced geographical presence and broad coverage across primary, specialised and highly specialised care

AstraZeneca's acquisition of Alexion, with its strong commercial portfolio and robust pipeline, will support its long-term ambition to develop novel medicines in areas of immunology with high unmet medical needs. Alexion achieved impressive revenue growth over the last few years, with revenues of $5.0bn in 2019 (21% year-on-year growth). Alexion has exhibited skilful commercial execution in building its 'blockbuster' C5 franchise. The success of the franchise is demonstrated by the effective transition of over 70% of PNH patients from *Soliris* to *Ultomiris* in less than two years of launch in its key markets, including the US, Japan and Germany, as well as the strong pipeline of additional indications for *Ultomiris*.

Rare diseases is a high-growth therapy area with rapid innovation and significant unmet medical need. Over 7,000 rare diseases are known today, and only c.5% have US Food and Drug Administration-approved treatments.[1] The global rare disease market is forecasted to grow by a low double digit percentage in the future.[2]

AstraZeneca intends to build on its geographical footprint and extensive emerging markets presence to accelerate the worldwide expansion of Alexion's portfolio.

The two companies have been on converging paths, AstraZeneca expanding its presence from primary to speciality care, whereas Alexion has been progressing from ultra-orphan to orphan and speciality conditions.

The acquisition strengthens AstraZeneca's industry-leading growth, underpinned by its broad portfolio of medicines, which will enable the new company to bring innovative

COMPLAINT

medicines to a broad range of healthcare practitioners in primary, speciality and highly specialised care.

The combined company is expected to deliver double-digit average annual revenue growth through 2025.

**Financial benefits**

Enhanced revenue growth, operating margin and cash-flow generation

The acquisition is expected to improve the combined Group's profitability, with the core operating margin significantly enhanced in the short term, and with continued expansion thereafter. This uplift is supported by increased scale and expected recurring run-rate pre-tax synergies of c.$500m per year from the combined Group (by end of the third year following completion of the acquisition). AstraZeneca expects to generate significant value from the acquisition by extending Alexion's commercial reach through leveraging AstraZeneca's global presence and accelerating the development of Alexion's pipeline.

The acquisition also strengthens AstraZeneca's cash-flow generation, providing additional flexibility to reinvest in R&D and rapid debt reduction, with an ambition to increase the dividend.

Immediately earnings-accretive and value-enhancing acquisition, in line with stated capital-allocation priorities

The acquisition is expected to deliver robust and sustainable accretion to AstraZeneca's core earnings per share (EPS) from the outset, with double-digit percentage accretion anticipated in the first three years following the completion of the acquisition.

The acquisition of Alexion is consistent with AstraZeneca's capital-allocation priorities. The combined company is expected to maintain a strong, investment-grade credit rating, and the acquisition supports AstraZeneca's progressive dividend policy. The combination represents a significant step in AstraZeneca's strategic and financial-growth plans.

**Details of the acquisition**

Key terms

The acquisition will be undertaken through a US statutory merger in which Alexion shareholders will receive $60 in cash and 2.1243 new AstraZeneca ADSs listed on the Nasdaq exchange for each of their Alexion shares. The cash and ADS consideration represents an c.45% premium to Alexion shareholders based on the closing stock price of Alexion on 11 December 2020 and a c.43% premium, based on the 30-day volume-weighted average closing stock price of $122.04 before this announcement. If they elect, Alexion shareholders may receive their allocation of AstraZeneca ADSs in the form of a corresponding number of ordinary shares of AstraZeneca in addition to the cash consideration.

Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.

COMPLAINT

Financing

To support the financing of the offer consideration, AstraZeneca has entered into a new committed $17.5bn bridge-financing facility, provided by Morgan Stanley, J.P. Morgan Securities plc and Goldman Sachs. The bridge-financing facility is available for an initial term of 12 months from the earlier of the date of completion of the acquisition and 12 December 2021 with up to two six-month extensions available at the discretion of AstraZeneca. The initial bridge financing facility is intended to cover the financing of the cash portion of the acquisition consideration and associated acquisition costs and to refinance the existing term loan and revolving credit facilities of Alexion. In due course, AstraZeneca intends to refinance the initial bridge-financing facility through a combination of new medium-term bank loan facilities, debt-capital market issuances and business cash flows.

The acquisition is expected to significantly enhance cash generation, which will support rapid debt reduction and overall deleveraging. AstraZeneca remains committed to maintaining a strong investment-grade credit rating. The dividend policy remains unchanged with a commitment to a progressive dividend policy; dividend cover is expected to be materially enhanced as a result of the acquisition.

Further information on synergies

The acquisition is expected to realise recurring run-rate pre-tax synergies of c.$500m per year from the combined Group, generated from commercial and manufacturing efficiencies as well as savings in central costs, with full run-rate expected to be achieved by end of the third year following completion of the acquisition.

To realise the total synergies, AstraZeneca expects to incur one-time cash costs of c.$650m, during the first three years following completion.

Management and employees

Members of Alexion's current senior management team will lead the future rare-disease activities. Under the terms of the acquisition agreement, AstraZeneca has agreed that for 12 months following closing, it will provide the Alexion employees with the same level of salary as such employees had before closing, incentive compensation opportunities that are in the aggregate no less favourable than those provided before closing and substantially comparable benefits to those provided before closing.

Governance

The companies will mutually agree on two individuals from the Alexion board of directors who will join the AstraZeneca board as directors upon closing of the acquisition.

Closing conditions

Closing of the acquisition is subject to approval by AstraZeneca and Alexion shareholders, certain regulatory approvals, approval of the new AstraZeneca shares for listing with the Financial Conduct Authority and to trading on the London Stock Exchange, and other customary closing conditions.

The acquisition is a Class 1 transaction for AstraZeneca and as such, will require the approval of its shareholders to comply with the UK Listing Rules. A shareholder circular, together with notice of the relevant shareholder meeting, will be distributed to shareholders in the first half of 2021. The Alexion proxy statement is also expected to be published in the first half of 2021.

Subject to the satisfaction of the closing conditions to the proposed acquisition, the companies expect the acquisition to close in Q3 2021.

Termination

The acquisition terms provide that Alexion will be liable to pay a break fee of up to $1.2bn to AstraZeneca in certain specified circumstances (including a change of Alexion's board recommendation or completion of an alternative acquisition). AstraZeneca will also be required to pay Alexion a break fee of $1.4bn in certain specified circumstances, including a change of AstraZeneca's board recommendation.

### The Inadequate Merger Consideration

52.     Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration.

53.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial results.

54.     For example, financial analysts at the firm SVB Leerink had valued the Company's stock as high as $200.00 per share within the past year. Such a value is a 14.29% increase in value over the consideration contained in the Proposed Transaction.

55.     Following the announcement of the Proposed Transaction, *The Motley Fool* released its brief on the deal saying, "Sales of Alexion's Soliris/Ultomiris franchise are expected to climb 17% year over year to a whopping $5 billion in 2020. Soliris is getting old and could begin facing biosimilar competition in 2026, but market exclusivity for Ultomiris should continue through 2035. Alexion is planning or running late-stage studies with Ultomiris and patients who have complement-mediated thrombotic microangiopathy, amyotrophic lateral sclerosis, and blood clots associated with bone

COMPLAINT

marrow transplantation, just to name a few. When AstraZeneca picks up Alexion's projects next year, the development of Ultomiris and the cash flows the drug produces will probably hit a higher gear than we've seen so far. Alexion relies on its growing Soliris/Ultomiris franchise for around 85% of total revenue but it isn't the only treatment with growing sales in the company's lineup. Strensiq is an enzyme replacement therapy with third-quarter sales that grew 23% year over year to an annualized $758 million, and it will most likely add over $1 billion to AstraZeneca's top line in 2022."

56.     The consistent past success of Alexion's portfolio demands a higher premium from AstraZeneca in itself, not including the Company's pipeline and being "arguably one of the biggest bargains in all of biotech."

57.     Notably, the stock consideration payable to Alexion shareholders is not insulated from fluctuations in AstraZeneca's stock price. If AstraZeneca's stock price were to drop, shareholders will not be compensated adequately for their ownership in Alexion stock. Since that time, AstraZeneca has dropped sharply and closed on December 14, 2020 at $50.03 per share.  So, rather than the approximate $175.00 lauded to Alexion stockholders at the announcement of the deal, the AstraZeneca stock drop has resulted in a merger consideration of approximately $161.30 per share, a decrease in value of 7.83%.

58.     Accordingly, the Proposed Transaction will allow AstraZeneca to purchase Alexion at an unfairly low price while availing itself of Alexion's significant value and upside or long-term potential.

***Preclusive Deal Mechanisms***

59.     The Merger Agreement contains certain provisions that unduly benefit the AstraZeneca by making an alternative transaction either prohibitively expensive or otherwise impossible.  Notably, in the event of termination, the merger agreement requires Alexion to pay up to $1.18 billion to the AstraZeneca and/or its affiliates, if the Merger Agreement is terminated under certain circumstances. Moreover, under one circumstance, Alexion must pay this termination payment even if it consummates any competing Company Superior Proposal (as defined in the Merger Agreement) *within 12 months*

COMPLAINT

*following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

60.    The Merger Agreement also contains a "No Solicitation by the Company" provision that restricts Alexion from considering alternative acquisition proposals by, *inter alia*, constraining Alexion's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Company Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Company Superior Proposal*" as defined in the Merger Agreement.

61.    Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide to the AstraZeneca and/or its affiliates information in order to match any other offer, thus providing the AstraZeneca access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the AstraZeneca.

62.    These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company, Plaintiff and its public stockholders.

63.    In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.  In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The

Merger Agreement contains none of these protections.  Rather, the Merger Agreement contains a *fixed* exchange ratio of $60 in cash and 2.1243 AstraZeneca American Depositary Shares (ADSs) which means that Alexion stockholders will receive 2.1243 ADSs, representing 1/2 shares of AstraZeneca common stock as a portion of the Merger Consideration in exchange for each of their Alexion shares, regardless of AstraZeneca*'s* stock price at the close of the transaction.  Thus, the consideration payable to Plaintiff and Alexion's stockholders is not insulated from fluctuations in AstraZeneca's stock price, and they are left in the precarious position of not knowing whether the consideration payable will decline further.

64.     Of significant note, the failure of the Board to negotiate a collar to establish parameters to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders has proved extremely prejudicial to Alexion stockholders.  On December 11, 2020, the last trading day before the deal was announced, AstraZeneca closed at $54.28 per share.  Since that time, AstraZeneca's per share price has fluctuated significantly and has recently traded as low as $50.03 per share, which would translate into a merger consideration of only approximately $161.30 per share.  The fact that the Proposed Transaction does not guarantee Plaintiff's or Alexion's public stockholders protection from such fluctuations in AstraZeneca's per share price seems to be of no concern to the Defendants.

65.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

66.     The breakdown of the benefits of the deal indicate that Alexion insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Alexion.

67.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.

68.     Moreover, while the Registration Statement does provide the information below, it fails to provide an accounting for the number of AstraZeneca ADSs that Company insiders will receive as a consequence of the merger being consummated:

| Name and Address of Beneficial Owner[1] | Number of Shares of Alexion Common Stock Beneficially Owned[2] | Percent of Outstanding Shares of Common Stock |
|---|---|---|
| The Vanguard Group[3] 100 Vanguard Blvd., Malvern, PA 19355 | 19,406,768 | 8.87 |
| Blackrock, Inc.[4] 55 East 52nd Street, New York, NY 10055 | 18,168,276 | 8.27 |
| Ludwig Hantson[5][15] | 254,749 | * |
| Brian Goff[6][15] | 68,904 | * |
| John Orloff[15] | 42,641 | * |
| Aradhana Sarin[15] | 23,917 | * |
| Ellen Chiniara[15] | 29,557 | * |
| Anne-Marie Law[15] | 28,741 | * |
| Felix Baker[7] | 8,939,411 | 4.07 |
| David Brennan[8] | 18,502 | |
| Christopher Coughlin[9] | 41,773 | * |
| Deborah Dunsire[10] | 8,431 | * |
| Paul Friedman | 6,877 | * |
| John Mollen[11] | 15,187 | * |
| Francois Nader[12] | 7,583 | * |
| Judith Reinsdorf[13] | 7,899 | * |
| Andreas Rummelt[14] | 36,230 | * |
| All directors and executive officers as a group (16 persons)[16] | 9,530,402 | 4.33 |

69.     Moreover, upon the consummation of the Proposed Transaction, the Registration Statement indicates that each outstanding Company stock option, restricted stock unit awards, and performance stock unit awards will be canceled and converted into the right to receive certain consideration according to the merger agreement.  However the Registration Statement fails to provide an accounting of these awards.

70.     In addition, upon the consummation of the Proposed Transaction, the Registration Statement indicates Alexion employees who retain their employment with the surviving entity for at

COMPLAINT

least one year will see all converted restricted stock units accelerated to vest. The payout of such vesting is significant, not shared by Plaintiff and public Company stockholders, and will be paid out as follows:

| Named Executive Officer | Accelerated Converted RSU Awards ($) |
|---|---|
| Ludwig Hantson | 18,777,060 |
| Aradhana Sarin | 4,259,918 |
| Brian Goff | 4,869,647 |
| John Orloff | 4,869,647 |
| Ellen Chiniara | 4,225,843 |

71.    Certain employment agreements with certain Alexion executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and Alexion's common stockholders and will be paid out as follows:

| Named Executive Officer[1] | Cash ($)[2] | Equity($)[3] | Perquisites / Benefits($)[4] | Total ($)[5] |
|---|---|---|---|---|
| Ludwig Hantson | 12,457,862 | 47,788,980 | 61,587 | 60,308,429 |
| Aradhana Sarin | 2,937,504 | 12,792,502 | 60,017 | 15,790,023 |
| Brian Goff | 2,934,566 | 12,900,737 | 78,730 | 15,914,033 |
| John Orloff | 3,053,535 | 13,148,243 | 61,587 | 16,263,365 |
| Ellen Chiniara | 2,609,605 | 10,615,326 | 61,587 | 13,286,518 |

72.    The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

73.    Thus, while the Proposed Transaction is not in the best interests of Alexion, Plaintiff or its stockholders, it will produce lucrative benefits for the Company's officers and directors.

COMPLAINT

***The Materially Misleading and/or Incomplete Registration Statement***

74.     On February 19, 2021, the Alexion Board and AstraZeneca caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available concerning the financial and procedural fairness of the Proposed Transaction.

> *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

75.     Specifically, the Registration Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose**:** Sufficient information regarding activist stockholder Elliot's demands for Alexion to sell itself and its relation to the eventual sales process and Proposed Transaction;

   a.  The specific reasoning as to why no committee of independent, disinterested directors of Alexion was created to run the sales process;

   b.  Sufficient information on what actions, if any, were taken in response to the potential conflict of interest arising from Defendant Brennan's previous role as CEO and Director of AstraZeneca and his role in negotiating on behalf of Alexion during the sales process leading to the Proposed Transaction.

   c.  Sufficient information as to why the Company Board did not insist upon the inclusion of a collar on the stock portion of the merger consideration contained in the Proposed Transaction;

   d.  The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Alexion on the one hand and any interested third party, including AstraZeneca, on the other, the manner in which those agreements differed from each other, if at all;

- 22 -

COMPLAINT

e.  The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Material Misrepresentations Concerning Alexion's Financial Projections*

76.     The Registration Statement fails to provide material information concerning financial projections provided by Alexion management and relied upon by BofA in its analyses.   The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

77.     The Registration Statement indicates that in connection with the rendering of their fairness opinions, BofA reviewed "certain internal financial and operating information with respect to the business, operations and prospects of Alexion furnished to or discussed with BofA Securities by the management of Alexion, including the certain financial forecasts relating to Alexion prepared by the management of Alexion reflecting its long-range plan for Alexion."

78.     Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that Alexion management provided to the Board and BofA.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

79.     With respect to the "PTRS Alexion projections," the Registration Statement fails to provide material information concerning the financial projections prepared by Alexion management. Specifically, the Registration Statement fails to disclose all material line items for the metrics of**:**

    a.   Non-GAAP Operating Income (Post-SBC), including the underlying metrics of: cost of goods sold; research and development expense; selling, general and administrative expense; stock-based compensation expense; one-time items; milestone payments; and amortization of purchased intangibles;

    b.   Tax-Effected EBIT, including the underlying metrics of estimated tax expense;

    c.   Unlevered Free Cash Flow, including the underlying metrics of: depreciation, changes in net working capital, milestone payments, and capital expenditures; and,

    d.   Non-GAAP EPS (Pre-SBC), including the underlying metrics of: the company's estimated fully diluted shares outstanding, stock-based compensation expense, interest expense, other income / expense, and estimated tax expense

80.     With respect to the "Non-PTRS Alexion projections," the Registration Statement fails to provide material information concerning the financial projections prepared by Alexion management. Specifically, the Registration Statement fails to disclose all material line items for the metrics of:

    a.   Operating Profit, including the underlying metrics of: cost of goods sold; research and development expense; selling, general and administrative expense; one-time items; milestone payments; and amortization of purchased intangibles; and

    b.   Non-GAAP Net Income, including the underlying metrics of: operating income, interest expense, other income / expense, and estimated tax expense.

81.     The Registration Statement also provides non-GAAP financial metrics, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

82.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.   Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

83.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of BofA's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

*Omissions   and/or   Material   Misrepresentations   Concerning   AstraZeneca's   Financial Projections*

84.     The Registration Statement fails to provide material information concerning financial projections provided by Alexion and/or AstraZeneca management and relied upon by BofA in its analyses.   The Registration Statement discloses management-prepared financial projections for AstraZeneca which are materially misleading.

85.     The Registration Statement indicates that in connection with the rendering of their fairness opinions, BofA reviewed "certain financial forecasts relating to AstraZeneca prepared by the management of Alexion based on certain publicly available financial forecasts for AstraZeneca."

86.     Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections regarding AstraZeneca that Alexion management provided to the Board and BofA.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.   Investors can come up with their own estimates of discount rates or [] market multiples.   What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

87.     With respect to the "Alexion management unaudited AstraZeneca projections," the Registration Statement fails to provide material information concerning the financial projections prepared by Alexion management.   Specifically, the Registration Statement fails to disclose all material line items for the metrics of:

     a.   Core EBIT, including the underlying metrics of: cost of goods sold; research and development expense; selling, general and administrative expense; and other operating income;

     b.   Unlevered Free Cash Flow, including the underlying metrics of: estimated tax expense, depreciation, restructuring payments, purchase of intangible assets, changes in net working capital, and capital expenditures; and

     c.   Core EPS, including the underlying metrics of: Core Net Income (post-SBC) (including the underlying metrics of: net interest and associates, estimated taxes, and minority interest expense) and AstraZeneca's estimated fully diluted shares outstanding.

88.     The Registration Statement also provides non-GAAP financial metrics, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

89.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

90.     Without accurate projection data presented in the Registration Statement, Plaintiff is are unable to properly evaluate the AstraZeneca's true worth and thus the true worth of a large portion of the merger consideration offered under the Proposed Transaction, the accuracy of BofA's financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.  As such, the Board has breached its fiduciary duties by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

91.     In the Registration Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

92.     With respect to the *Selected Publicly Traded Companies Analysis* for Alexion, the Registration Statement fails to disclose the benchmark multiples of reach selected public company.

93.     With respect to the *Selected Precedent Transactions Analysis* for Alexion, the Registration Statement fails to disclose the following:

    a.  The benchmark multiples of reach selected precedent transaction;

    b.  The date on which each selected precedent transaction was announced;

    c.  The date on which each selected precedent transaction closed; and

    d.  The value of each selected precedent transaction.

94.     With respect to the *Discounted Cash Flow Analysis* for Alexion, the Registration Statement fails to disclose the following:

    a.  Alexion's terminal values prior to 2040 utilized;

    b.  The specific inputs and assumptions used to calculate the applied discount rate range of 7.0% to 9.5%;

    c.  Alexion's estimated weighted average cost of capital;

    d.  Alexion's net debt as of September 30, 2020; and

    e.  The amount of Alexion's fully-diluted shares of common stock outstanding.

95.     With respect to the *Discounted Cash Flow Analysis Sensitivity Analysis* for Alexion, the Registration Statement fails to disclose the following:

    a.  The specific inputs and assumptions used to determine the following assumptions:

        i.  ~40% EU price decrease for ANDEXXA as compared to Alexion management unaudited Alexion projections;

        ii.  ~5% ULTOMIRIS price decrease in 2023 and subsequently every 4 years thereafter;

        iii.  Tax rate increase to 28% by 2026, 33% by 2030, and 40% by 2032;

COMPLAINT

       b.  The specific inputs and assumptions used to determine the applied illustrative discount rate range of 8.0% to 10.5%.

96.    With respect to the *Wall Street Analysts Price Targets* for Alexion, the Registration Statement fails to disclose the following:

       a.  The specific price targets used; and

       b.  The identity of the Wall Street Analysts for each price target used.

97.    With respect to the *Selected Publicly Traded Companies Analysis* for AstraZeneca, the Registration Statement fails to disclose the benchmark multiples of reach selected public company.

98.    With respect to the *Discounted Cash Flow Analysis* for AstraZeneca, the Registration Statement fails to disclose the following:

       a.  AstraZeneca's terminal values calculated;

       b.  The specific inputs and assumptions used to determine the applied perpetuity growth rate range of negative 3.0% to positive 1.0%;

       c.  AstraZeneca's terminal year cash flows;

       d.  The specific inputs and assumptions used to calculate the applied discount rate range of 6.0% to 7.5%;

       e.  AstraZeneca's estimated weighted average cost of capital;

       f.  AstraZeneca's net debt as of September 30, 2020; and

       g.  The amount of AstraZeneca's fully-diluted ordinary shares outstanding.

99.    With respect to the *Wall Street Analysts Price Targets* for AstraZeneca the Registration Statement fails to disclose the following:

       a.  The specific price targets used; and

       b.  The identity of the Wall Street Analysts for each price target used.

100.    With respect to the *Has/Gets Analysis* the Registration Statement fails to disclose the following:

    a.   The calculated present value of the cost-synergies as of September 30, 2020 for the Pro-Forma entity; and

    b.   The specific inputs and assumptions used to determine the applied discount rate range of 7.0% to 9.5%.

101.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

102.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a public Alexion stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Alexion stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Registration Statement.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### <u>(Against the Individual Defendants)</u>

103.    Plaintiff repeats all previous allegations as if set forth in full herein.

104.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

105.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive of the true value of his investment in Alexion.

106.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff in his capacity as a stockholder of Alexion by entering into the Proposed Transaction through a flawed and unfair

process and failing to take steps to maximize the value of Alexion to its public stockholders, including Plaintiff.

107.    Indeed, Defendants have accepted an offer to sell Alexion at a price that fails to reflect the true value of the Company, thus depriving Plaintiff of the reasonable, fair and adequate value of his shares.

108.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for him to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

109.    The Individual Defendants dominate and control the business and corporate affairs of Alexion, and are in possession of private corporate information concerning Alexion's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Alexion such as Plaintiff which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

110.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

111.    As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will not receive his fair portion of the value of Alexion's assets and has been and will be prevented from obtaining a fair price for his common stock.

112.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of Plaintiff.

113.    Plaintiff and has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendants Alexion, AstraZeneca, and Merger Vehicles

114.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

115.    Defendants Alexion, AstraZeneca, and Merger Vehicles knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

116.    As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from obtaining a fair price for his shares.

117.    Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

118.    Plaintiff repeats all previous allegations as if set forth in full herein.

119.    Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

120.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

121.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

122.    The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

123.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

124.    The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

125.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

COMPLAINT

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

126.    Plaintiff repeats all previous allegations as if set forth in full herein.

127.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

128.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

129.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Alexion's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations

- 33 -

specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

130.    The Individual Defendants acted as controlling persons of Alexion within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Alexion to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Alexion and all of its employees.  As alleged above, Alexion is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Proxy.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Alexion and obtain a transaction which is in the best interests of Alexion and its stockholders, including Plaintiff;

E.    Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's

COMPLAINT

attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 10, 2021                    **BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*

- 35 -

COMPLAINT